IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DALE ALLEN HAMER, <br> TDCJ #757273, <br><br> Plaintiff, <br><br> v. <br><br> WARDEN JAMES JONES, *et al.* <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br> CIVIL ACTION NO. H-08-2417 |

## MEMORANDUM AND ORDER

State inmate Dale Allen Hamer (TDCJ #757273) has filed a complaint under 42 U.S.C. § 1983, alleging violation of his civil rights. Several of the claims and defendants were dismissed previously. Pending before the Court is a motion to dismiss by Warden James Jones. (Docket Entry No. 46). Also pending is a joint motion for summary judgment by Warden Jones and Regional Director Robert Treon. (Docket Entry No. 49). Hamer has filed more than one response. (Docket Entry Nos. 47, 51, 52, 53). After reviewing all of the pleadings, and the applicable law, the Court grants the defendants' motions and dismisses this case for reasons set forth below.

I.  BACKGROUND

Hamer is presently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"), at the Terrell Unit in Rosharon, Texas. Hamer filed this complaint, originally, against Warden James Jones and several other officials employed by TDCJ. In an amended complaint, Hamer alleged various civil rights violations by Officer Cook, Officer Dennis, Segregation Officer Deborah Hardeman, Property Officer Fernater Smith, Grievance Officer Susan Rivas, Regional Director Robert Treon, and Assistant Regional

Director Doos Waldron. (Docket Entry No. 5). Thereafter, Hamer provided a more definite statement of the claims at the Court's request. (Docket Entry No. 11).

According to the pleadings, the Terrell Unit was on lockdown status on May 8, 2008, for a routine search of the cells and dormitories at that facility. Hamer claimed that he was ordered to submit to a strip search by female officers in violation of a prison policy that precludes inmate searches by officers of a different gender. When Hamer objected to the cross-gender search, TDCJ Regional Director Robert Treon, who was supervising the search of Hamer's dormitory that day, ordered Hamer to be placed in handcuffs. Hamer was charged with a disciplinary violation for creating a disturbance that disrupted unit operations. Hamer complained that, while he was being escorted to the infirmary for a pre-hearing detention physical, excessive force was used against him. Hamer was eventually convicted of the disciplinary charges that were lodged against him as a result of the May 8, 2008 disturbance. Hamer complained that, while he was in segregated confinement, certain items (a fan and a pair of headphones) were stolen from his personal property.

The Court requested an administrative report and record from the State Attorney General's Office to supplement the pleadings. (Docket Entry Nos. 13, 18-19). After considering all of the pleadings, the Court dismissed the complaint in an order entered on June 5, 2009. (Docket Entry No. 21). The Fifth Circuit affirmed the dismissal order with respect to most of Hamer's claims, including his allegation of excessive force and his claims concerning the loss of personal property. *See Hamer v. Jones*, No. 09-20431 (5th Cir. Feb. 9, 2010) (per curiam). However, the Fifth Circuit vacated the dismissal of Hamer's claim that Director Treon violated Hamer's Fourth Amendment right to bodily privacy and remanded that issue for additional consideration. *See id*. slip op. at 8. In particular, assuming that Hamer's allegation of a cross-

gender search was true, the Fifth Circuit instructed this Court to consider the following issue on remand: "If Director Treon was, as Hamer alleged, personally involved in the cross-sex search and if the search occurred under non-exigent circumstances as Hamer alleged, then his claim may rise to the level of a constitutional violation." *Id.*

On remand, this Court requested an answer from Warden Jones and Director Treon. Warden Jones has responded with a motion to dismiss, noting that the claims against him were dismissed previously and not remanded by the Fifth Circuit. Warden Jones and Director Treon have also filed a joint motion for summary judgment, arguing that the Fourth Amendment claims against them must be dismissed because Hamer did not exhaust available administrative remedies as required by the Prison Litigation Reform Act, among other things. In response to these motions, Hamer seeks leave to re-litigate all of the claims presented in his pleadings. These arguments are addressed in turn, beginning with the motion to dismiss filed by Warden Jones.

## II. MOTION TO DISMISS BY WARDEN JONES

Warden Jones has filed a motion to dismiss, noting that the claims against him were dismissed by this Court previously. Warden Jones notes further that this Court's decision to dismiss the claims against him was affirmed by the Fifth Circuit, which vacated only the dismissal of Hamer's claim against Director Treon concerning a potential violation of the Fourth Amendment right to bodily privacy.

The record confirms that Warden Jones is correct. In the dismissal order dated June 5, 2009, this Court found that Hamer failed to allege facts showing that Warden Jones or Assistant Director Waldron had the requisite personal involvement with a constitutional violation.

3

(Docket Entry No. 21, at 14-15). The Fifth Circuit did not disturb this decision on appeal. *See Hamer v. Jones*, No. 09-20431, slip op. at 8 (5th Cir. Feb. 9, 2010) (per curiam). Therefore, Warden Jones's motion to dismiss (Docket Entry No. 46) will be granted.[1]

### III. HAMER'S MOTIONS TO RE-LITIGATE CLAIMS

In response to the defendants' motions, Hamer has filed two motions in which he appears to ask leave to re-litigate all of the claims raised in his original complaint. (Docket Entry Nos. 47, 51). As explained to Hamer previously (Docket Entry No. 40), the Court cannot consider issues outside the scope of the Fifth Circuit's order on remand, which authorized further proceedings limited only with respect to his Fourth Amendment bodily-privacy claim concerning Director Treon. Accordingly, the mandate rule precludes consideration of additional issues. *See Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir. 2002); *see also Henderson v. Stalder*, 407 F.3d 351, 354 (5th Cir. 2005) (holding that, following remand, a district court's decision to allow an amended complaint to add new claims and a new party violated the mandate rule). For this reason, Hamer's motions for leave to litigate additional claims (Docket Entry Nos. 47, 51) will be denied.

### IV. MOTION FOR SUMMARY JUDGMENT

Director Treon has submitted an affidavit denying that he ordered Hamer to be strip searched and he insists that no such cross-gender search took place. (Docket Entry No. 49, Exhibit C). Director Treon's affidavit is supported by an affidavit from another correctional

---

[1] In addition, the Court notes that Warden Jones has provided an affidavit, stating that he was not present at the time when Hamer claims that he was searched by female officers. (Docket Entry No. 49, Exhibit B). Warden Jones moves, in the alternative, for summary judgment on the grounds that he had no personal involvement in the alleged constitutional violation. Hamer has filed a response to the motion, but he does not allege or show that Warden Jones had any involvement in the cross-gender search that forms the basis of his complaint involving Director Treon.

officer who was present and who states that no strip search occurred.  (Docket Entry No. 49, Exhibit D).  Hamer disputes this.  (Docket Entry Nos. 52-53).  As a preliminary matter, however, the defendants seek summary judgment on the grounds that Hamer failed to exhaust available administrative remedies with respect to his claims against Director Treon (or Warden Jones) because he did not raise this issue properly during the grievance process.  The defendants argue, therefore, that Hamer's claims are barred from review because he failed to comply with the exhaustion requirement found in the Prison Litigation Reform Act (the "PLRA"), which governs this suit.  The parties' contentions are addressed below under the governing standard of review.

**A.   Standard of Review**

The defendants' motion is governed by Rule 56 of the Federal Rules of Civil Procedure, which mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In that respect, a reviewing court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c)(2); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however,

need not negate the elements of the non-movant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted). In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co*., 478 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co*., 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

The plaintiff proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Pleadings filed by

a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary-judgment motion. *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

> B. **Exhaustion of Administrative Remedies**

Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law." The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).

TDCJ has a formal two-step administrative grievance process that is mandated by the Texas Legislature. *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable); *see also Almond v. Tarver*, 468 F. Supp. 2d 886, 896 (E.D. Tex. 2006) (citing 37 TEX. ADMIN. CODE ANN. § 283.3 (West 2006)). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson v. Johnson*, 385

F.3d 503, 515 (5th Cir. 2004). Once an inmate receives a response to his Step 1 grievance, he then has up to ten days to file a Step 2 grievance to appeal an unfavorable result. *See id*. Step 2 grievances are reviewed at the state level. *See id*.; *Wendell*, 162 F.3d at 891. A Texas prisoner must pursue a grievance by presenting his claims through both steps to satisfy the exhaustion requirement. *See Johnson*, 385 F.3d at 515 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

The defendants have provided a record of the grievances that Hamer filed regarding the incident that occurred on May 8, 2008, which forms the basis for of complaint. (Docket Entry No. 49, Exhibit A). The record shows that Hamer filed a Step 1 grievance on May 21, 2008. That grievance, which complains primarily about Hamer's "[r]ight to be free from assault" or the use of excessive force, contains the following isolated reference to a cross-gender search:

> . . . On 5-8-08, at E-3 hallway officer's [sic] was [sic] doing cross-gender searches, and a female officer's [sic] said strip, I ask why was female officer's [sic] doing strip searches on men, and then I was handcuffed for talking[.] . . . .

(Docket Entry No. 51, Exhibit A, Grievance #2008147093). The remainder of Hamer's grievance addresses his allegations of excessive force, the ensuing disciplinary charges, and the loss of property while in pre-hearing detention. In response to the Step 1 grievance, the administrative official advised Hamer that his claim of excessive force would be reviewed further in "use of force report (MA 02141-05-08)."[2] There was no administrative response to

---

2   The report referenced in the grievance (use-of-force report MA-02141-05-08) is in the record. (Docket Entry No. 18, Exhibit A). Hamer made no allegation about an improper cross-gender search during the use-of-force investigation. After reviewing the report, which was prepared pursuant to the "TDCJ Use of Force Policy," the Office of Inspector General declined to open an investigation. The record also includes an administrative investigation conducted in connection with the disciplinary charge lodged against Hamer on May 8, 2008, for engaging in disruptive behavior. (Docket Entry No. 18, Exhibit B). Hamer made no allegation about an improper cross-gender search during this proceeding either.

Hamer's assertion that "a female officer[]" ordered him to strip in violation of prison rules. Although Hamer filed a Step 2 grievance on June 18, 2008, he did not complain further about an unauthorized cross-gender strip search. Thus, neither the Step 1 nor the Step 2 grievance makes reference to Director Treon, or Warden Jones, and there is no mention of any wrongdoing on their part.

The Fifth Circuit has held that prisoners are not required to identify officials in a grievance or provide personal notice to a particular official that he may be sued. *See Johnson*, 385 F.3d at 522 (addressing the level of detail necessary to sufficiently identify an officer or official in a TDCJ grievance). However, "the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems, this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *See id*. Where improper conduct by an officer is alleged, "the administrators responding to the grievance would want to know . . . who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter." *Id.* at 517.

In this case, Hamer did not identify any of the individuals connected to the objectionable cross-gender search, other than to describe the officer who ordered him to strip as "female." Assuming that Director Treon was in charge of supervising the searches that day, this allegation does not implicate him in the incident at issue. Likewise, in contrast to his abbreviated reference to a cross-gender search by unidentified "hallway" officers, the Step 1 grievance filed by Hamer contained more than a page of allegations about a use of force, the disciplinary charges, and the loss of personal property. The isolated reference made in Hamer's Step 1 grievance was insufficient to provide administrators with adequate notice or a fair opportunity to address the

issue of whether an inappropriate strip search occurred and, if it did, whether Director Treon or any other supervisory official had the requisite personal involvement. Even if the brief reference found in the Step 1 grievance was sufficient to give some notice, Hamer does not dispute that he failed to raise any claim concerning a cross-gender search in the Step 2 grievance that he filed about the incident.

The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which demands compliance with prison procedural rules. As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524. By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* (citing *Booth*, 532 U.S. at 737). In addition to filtering out potentially frivolous claims, Congress also believed that internal review would facilitate adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative record that clarifies the contours of the controversy. *Id.* (citations omitted).

Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an institution's procedural rules. *See Woodford*, 548 U.S. at 96-98. Hamer does not dispute that he failed to comply with prison procedures by including specific allegations of a Fourth Amendment violation by Director Treon, Warden Jones (or any other individual defendant) in his Step 1 grievance. Likewise, Hamer does not dispute that he

10

failed to raise any Fourth Amendment claim at all in the Step 2 grievance. Hamer's failure to complete both steps of the grievance process violates the PLRA's exhaustion requirement found in § 1997e(a), which mandates proper exhaustion *before* filing suit. *See Woodford*, 548 U.S. at 83-84; Johnson, 385 F.3d at 515.

The defendants have met their burden to demonstrate that Hamer failed to exhaust administrative remedies and Hamer has not raised a genuine issue of material fact. Therefore, the defendants are entitled to summary judgment on this issue. *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Because the issue of exhaustion is dispositive, the Court declines to reach the defendants' remaining arguments.

### V. CONCLUSION AND ORDER

Accordingly, based on this record, the Court **ORDERS** as follows:

1. The motion to dismiss by Warden Jones (Docket Entry No. 46) and the defendants' motion for summary judgment on the issue of exhaustion (Docket Entry No. 49) are **GRANTED**.

2. Hamer's motions for leave to litigate additional claims (Docket Entry Nos. 47, 51) are **DENIED**.

3. This claims against Warden Jones are **DISMISSED** with prejudice; the claims against Warden Treon are **DISMISSED** without prejudice for lack of exhaustion.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas this 5th day of November, 2010.

_____
Kenneth M. Hoyt
United States District Judge